J-A28038-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| JEFFREY M. BROWN ASSOCIATES, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellant | : | |
| v. | : | |
| | : | No. 1152 EDA 2022 |
| MAIN STREET PHASE, II, LP  AND MAIN STREET CINEMA, LP N/K/A MAIN STREET PHASE II, LP | : | |

Appeal from the Order Entered March 30, 2022
In the Court of Common Pleas of Chester County Civil Division at No(s):
2022-00788-ML

| JEFFREY M. BROWN ASSOCIATES, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellant | : | |
| v. | : | |
| | : | No. 1153 EDA 2022 |
| MAIN STREET PHASE, II, LP  AND MAIN STREET CINEMA, LP N/K/A MAIN STREET PHASE II, LP | : | |

Appeal from the Order Entered March 29, 2022
In the Court of Common Pleas of Chester County Civil Division at No(s):
2022-00789-ML

| JEFFREY M. BROWN ASSOCIATES, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellant | : | |
| v. | : | |
| | : | No. 1154 EDA 2022 |

MAIN STREET PHASE, II, LP  AND    :
MAIN STREET CINEMA, LP N/K/A      :
MAIN STREET PHASE II, LP          :

Appeal from the Order Entered March 30, 2022
In the Court of Common Pleas of Chester County Civil Division at No(s):
2022-00790-ML

| JEFFREY M. BROWN ASSOCIATES, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1155 EDA 2022 |
| MAIN STREET PHASE, II, LP  AND | : | |
| MAIN STREET CINEMA, LP N/K/A | : | |
| MAIN STREET PHASE II, LP | : | |

Appeal from the Order Entered March 30, 2022
In the Court of Common Pleas of Chester County Civil Division at No(s):
2022-00791-ML

| JEFFREY M. BROWN ASSOCIATES, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1156 EDA 2022 |
| MAIN STREET PHASE, II, LP  AND | : | |
| MAIN STREET CINEMA, LP N/K/A | : | |
| MAIN STREET PHASE II, LP | : | |

Appeal from the Order Entered March 30, 2022
In the Court of Common Pleas of Chester County Civil Division at No(s):
2022-00792-ML

| JEFFREY M. BROWN ASSOCIATES, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| Appellant | : | |

- 2 -

J-A28038-22

|  |  |  |
|---|---|---|
|  | : |  |
|  | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
|  | : | No. 1157 EDA 2022 |
| MAIN STREET PHASE, II, LP  AND | : |  |
| MAIN STREET CINEMA, LP N/K/A | : |  |
| MAIN STREET PHASE II, LP | : |  |

Appeal from the Order Entered March 30, 2022
In the Court of Common Pleas of Chester County Civil Division at No(s):
2022-00793-ML

BEFORE:  PANELLA, P.J., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED JUNE 28, 2023**

Jeffrey M. Brown Associates, LLC ("JMB"), appeals from the orders sustaining the preliminary objections filed by Main Street Phase, II, LP, Main Street Cinema, LP n/k/a/Main Street Phase II, LP (collectively "Main Street") and striking JMB's six mechanics' lien claims.  We vacate the orders and remand for further proceedings.

This dispute arises from the construction of the Ashbridge Exton Apartments, an apartment complex located in Exton, Pennsylvania (hereinafter "the Project").  In 2018, JMB and Main Street entered into a contract for the construction of the Project, which consists of six multi-story buildings providing approximately 400 luxury apartment units as well as amenity and commercial spaces ("the Contract").  Fidelity and Deposit Company of Maryland ("F&D"), acting as surety, issued a performance bond guaranteeing JMB's complete and timely work in accordance with the Contract.

- 3 -

In June 2020, Main Street issued a notice of default to JMB based on its defective and untimely performance of the Contract. Main Street also asserted a claim under F&D's performance bond. In July 2020, F&D began directly financing JMB's operations to complete the Project. F&D retained Nicholson Professional Consulting to administer an escrow account to control funds for the payment of contract balances. In connection with the notice of default and the assistance being provided by F&D, the president of JMB executed a Letter of Direction to Main Street in July 2020. Therein, JMB irrevocably directed Main Street to make all subsequent payments for debts due to JMB under the Contract to an escrow account outside JMB's control. The Letter of Direction to Main Street provided, *inter alia*:

> This is to advise you that [JMB], hereby irrevocably requests that any and all payment due or to become due of any kind or nature on account of the above[-]described Contract and Project be made payable to Nicholson Professional Consulting FBO Jeffrey M. Brown Associates, LLC Special Account. . . ..
>
> Please be advised that this letter of direction is irrevocable by [JMB] and that [F&D] agrees to this arrangement. Furthermore, there will be no modification or change in these instructions without the written authorization and express consent of [F&D].

Letter of Direction, 7/2/20, at 1.

On November 3, 2020, JMB, Main Street, and F&D entered into a Liquidated Damages Settlement Agreement and Dedication of Contract Balance (the "Dedication Agreement"). The Dedication Agreement provides that all balances due and owing from Main Street to JMB under the Contract

must be paid to F&D or into an escrow account controlled by Main Street and

F&D:

> 7. [Main Street's] Collection of Settlement Amount from Project Payments: . . . When Final Completion is achieved, [Main Street] will either release the Retainage and any unpaid Contract Balance to [F&D], or a portion thereof that [Main Street] determines is due and owing, and deposit the remaining Retainage amount and unpaid Contract Balance, if any, into an escrow account maintained by a third party escrow agent selected by the parties ("Escrow Account"), such that the full amount of Retainage and unpaid Contract Balance has either been paid to [F&D] and/or into the Escrow Account.

> 8. Escrow Account: The Parties have agreed that the firm of Land Services USA will serve as the escrow agent to retain escrowed funds, in an interest-bearing account, subject only to release by agreement of [Main Street] and [F&D] or by court order enforcing an arbitration award as provided in Sections 14 and 15 below.
>
> * * * *

> 10. Owner Payment of Contract Balance: [Main Street] dedicates the unpaid Contract Balance to [F&D] . . . All amounts previously held by [Main Street], as listed in Section 5, are understood by the parties to be part of the Unpaid Balance payable to [F&D] and will be included in the Unpaid Balance for invoicing in accordance with the Contract. JMB will void the two (2) joint checks payable to Delinco and JMB issued by Main Street on June 5, 2020 and JMB will consent to the release of the remaining amounts withheld previously by [Main Street] which are in a joint JMB/[Main Street] checking account.

Dedication Agreement, 11/3/20, at 3.[1]

---

[1] The Dedication Agreement further provides that, as of November 2020, F&D had expended $8,076,113.63 pursuant to the performance bond in order to finance JMB's completion of the Project. **See** Dedication Agreement, 11/3/20, at 3, ¶ 9.

On February 2, 2022, JMB filed six separate mechanics lien claims, each relating to a different building included in the Project (*i.e.*, buildings A through F).  In each mechanics' lien claim, JMB averred that: (1) as the general contractor on the Project, JMB provided labor, materials, equipment and services to complete the Project; JMB's work on the Project was completed in September 2021; (3) all conditions precedent to JMB's right to payment have been satisfied; (4) Main Street has made no payments in support of the Project's completion since January 2021; (5) the total amount remaining due by Main Street for the entire Project is $7,521,422.00.  JMB further explained in each claim that:

> The Dedication Agreement provided for [F&D] to advance funds to JMB to assist JMB in fulfilling its obligations under the Contract, subject to [Main Street] agreeing to pay the remaining [C]ontract balance to [F&D] to be used in support of JMB's completion efforts.  The remaining contract balance – in excess of $7 million – would be invoiced by JMB on a monthly basis in accordance with the Contract.  The Dedication Agreement also provided that if [Main Street] disputed certain amounts invoiced by JMB, it would deposit those amounts into a third-party escrow account . . . pending resolution of those disputes.

Mechanics' Lien Claims, 2/2/22, at unnumbered 3, n.1.

In each case, Main Street filed preliminary objections on the basis that the mechanics' lien claims failed to conform with 49 P.S. § 1301(a)[2] because

---

[2] Section 1301(a) provides, in relevant part, as follows:

> General Rule.  Except as provided under subsection (b), every improvement and the estate or title of the owner in the property

*(Footnote Continued Next Page)*

there were no debts due by Main Street to JMB. JMB filed responses in opposition, and Main Street filed sur-replies. The trial court thereafter entered orders, one at each docket, granting Main Street's preliminary objections and striking JMB's mechanics' lien claims.[3] JMB filed timely notices of appeal at each docket, and in each case, both JMB and the trial court complied with Pa.R.A.P. 1925. This Court consolidated the appeals upon uncontested motions by JMB.

JMB raises the following issues for our review:

1. Did the trial court commit reversible error by finding that no debt was owed to JMB, when payment was explicitly directed to be made into an account "for the benefit of" JMB?

2. Did the trial court commit reversible error by finding, as a matter of law, that the Letter of Direction evidences JMB's "intent" to assign its payment rights to [F&D] (thereby waiving its mechanic's lien right), even though the Letter of Direction is not a contract document, but instead, is extrinsic evidence, which therefore means that the trial court decided a factual question on preliminary objections without hearing all factual evidence on the dispute?

3. Did the trial court commit reversible error by finding that the Letter of Direction assigned JMB's right to payment to [F&D],

_____

shall be subject to a lien, to be perfected as herein provided, for the payment of all debts due by the owner to the contractor . . . for labor or materials furnished in the erection or construction . . . .

49 P.S. § 1301(a).

[3] On March 29, 2022, the trial court entered an order at docket number 2022-00789. On March 30, 2022, the trial court entered orders at docket numbers 2022-00788, 2022-00790, 2022-00791, and 2022-00792. On April 5, 2022, the trial court entered an order at docket 2022-00793.

even though the Letter of Direction merely changed the payee account for [Main Street's] payments, contains no assignment language at all, and provides for [Main Street] to pay contract funds into an account "for the benefit of" JMB?

4. Did the trial court commit reversible error by necessarily finding that JMB prospectively waived its statutory right to file a mechanics lien, when [Main Street] provided no consideration for such waiver and there is no manifestation of a clear and unequivocal intent to waive such rights?

5. Did the trial court commit reversible error by holding that JMB lacked standing to file a mechanics lien when JMB was always the statutory "contractor" that furnished material and labor to the Project, and [Main Street] did not pay JMB for the material and labor it provided to the Project?

JMB's Brief at 5-6 (unnecessary capitalization omitted, issues reordered for ease of disposition).[4]

Our standard of review of an order granting preliminary objections is as follows:

> Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

---

[4] We note with disapproval that, although JMB purports to raise five issues for our review, the argument section of its brief sets out only three issues which do not correspond to the issues as set forth in the Statement of Questions Presented. **See** Pa.R.A.P. 2119(a) (providing that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed— the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent"). Moreover, JMB discusses multiple sub-issues in each of its arguments. However, as these defects do not hinder our appellate review, we decline to find waiver based on JMB's failure to adhere to our Rules of Appellate Procedure.

>     Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

***Feingold v. Hendrzak***, 15 A.3d 937, 941 (Pa. Super. 2011) (citation omitted).

A mechanics' lien is an extraordinary remedy that should only be afforded to contractors or subcontractors who judiciously adhere to the requirements of the Mechanics' Lien Law ("MLL"), 49 P.S. § 1101 *et seq*. ***See Phila. Constr. Servs., LLC v. Domb***, 903 A.2d 1262, 1267 (Pa. 2006). Because the MLL is a creature of statute in derogation of the common law, it must be given strict construction and any questions of interpretation should be resolved in favor of a strict, narrow construction. ***See Terra Firma Builders, LLC v. King***, 249 A.3 976, 983 (Pa. 2021).

The MLL provides a right to a mechanics' lien "for the payment of ***all debts due by the owner to the contractor***. . . ***for labor or materials furnished in the erection or construction***. . .. 49 P.S. § 1301(a) (emphasis added). Pursuant to the MLL, a "claimant" is defined as "a contractor or subcontractor who has filed or may file a claim under this act for a lien against property." 49 P.S. § 1201(6). The MLL defines "contractor" as

"one who, by contract with the owner, express or implied, erects, constructs, alters or repairs an improvement or any part thereof or furnishes labor, skill or superintendence thereto; or supplies or hauls materials, fixtures, machinery or equipment reasonably necessary for and actually used therein; or any or all of the foregoing, whether as superintendent, builder or materialman." *Id*. § 1201(4).

Mechanics' liens are designed to protect persons who improve a piece of property by giving them a lien against that property for payment for material and labor independent of contractual remedies. *See Bricklayers of Western Pennsylvania Combined Funds, Inc. v. Scott's Development Co.*, 90 A.3d 682, 690 (Pa. 2014). A mechanics' lien proceeding merely addresses the rights of the parties vis-à-vis a parcel of property. *See Matternas v. Stehman*, 642 A.2d 1120, 1123 (Pa. Super. 1994) (concluding that a mechanics' lien proceeding "is essentially an *in rem* proceeding"). A mechanics' lien action is distinct from a breach of contract action and is not the basis for recovery of unliquidated damages or settlement of the contractual obligations of the parties. *See Wyatt Inc. v. Citizens Bank of Pennsylvania*, 976 A.2d 557, 570 (Pa. Super. 2009); *see also Matternas*, 642 A.2d at 1124 (explaining that the MLL was merely intended to protect the prepayment labor and materials that a contractor invests in another's property).

"Any party may preliminarily object to a [mechanics' lien] claim upon a showing of exemption or immunity of the property from lien, or for lack of conformity with this act."  49 P.S. § 1505.  If an issue of fact is raised in preliminary objections to a mechanics' lien claim, the court may take evidence by deposition or otherwise.  **Id**.

In support of its first issue, JMB contends that the trial court conflated the scope of a mechanics' lien claim allowed by law with the right to bring a mechanics' lien claim.  JMB argues that, although both the trial court and Main Street relied on section 1301 for the determination of who may bring a mechanics' lien, "[section] 1301 does not determine who is a proper lien claimant, but only what types of damage may be included within the lien."  JMB's Brief at 19-20.  JMB further maintains that the trial court conflated the question of what debts are due by Main Street to JMB with the separate question of how the debt is to be satisfied.  JMB argues that the Dedication Agreement and the Nicholson FBO Account merely provide a procedure and a financial account for Main Street to satisfy its payment obligations under the Contract, but do not erase Main Street's debt to JMB.

The trial court determined that "by virtue of the Letter of Direction and Dedication Agreement, [Main Street] owe[s] no debt to [JMB]."  Trial Court

Opinions, 6/17/22, at 3.[5] The court further determined that JMB did not retain any right to receive payment from Main Street. *Id*. at 2.

As explained above, when presented with Main Street's preliminary objections, the trial court was required to accept as true all material facts set forth in the mechanics' lien claims, as well as all inferences reasonably deducible therefrom. *See Hendrzak*, 15 A.3d at 941. Thus, the trial court was required to accept as true that Main Street, as owner of the Project, failed to pay its general contractor, JMB, amounts due under the Contract for labor and materials expended by JMB to complete the construction of Project. *Id*.

The fact that the mechanics' lien claims also indicated that the parties made alternate arrangements as to the manner and means by which Main Street was to *discharge* its debt to JMB does not alter or negate the fact that, pursuant to the express terms of the Contract, *a debt is still owed to JMB*, as the general contractor. *See* 49 P.S. § 1301(a). At no point did the parties agree to wholly discharge Main Street's remaining payment obligations under the Contract or relieve Main Street of the responsibility for satisfying the unpaid balances due for labor and construction of buildings A through F, which

___

[5] Contrary to JMB's assertions otherwise, the trial court did not specifically determine that JMB lacked standing to bring a mechanics' lien claim or find that JMB waived it rights to assert a mechanics' lien claim. Rather, the trial court simply concluded that no debt was owed by Main Street to JMB. *See* Trial Court Opinions, 6/17/22, at 3; *see also* Orders, 3/29/22-4/5/22, at 1 n.1 (concluding that "the intent to [the Dedication Agreement and the Letter of Direction] was to assign [JMB's] right to payment to its surety").

purportedly total $7,521,422.00.[6]   Indeed, when the parties executed the Letter of Direction, they specifically contemplated that Main Street still owed debts to JMB under the Contract; however, they merely agreed that Main Street would discharge its debts to JMB by paying those debts into a special account:

> This is to advise you that [JMB], hereby irrevocably requests that ***any and all payment due or to become due of any kind or nature on account of the above[-]described Contract and Project*** be made payable to Nicholson Professional Consulting FBO Jeffrey M. Brown Associates, LLC Special Account. . . ..

Letter of Direction, 7/2/20, at 1 (emphasis added).  By executing the Letter of Direction and the Dedication Agreement, the parties merely agreed that Main Street would discharge the debts it still owed to JMB by directing payment for those debts to the Nicholson Professional Consulting FBO Jeffrey M. Brown Associates, LLC Special Account.

Accordingly, we are constrained to conclude that the trial court erred by determining that Main Street owed no debt to JMB and granting Main Street's preliminary objections on this basis.  Accordingly, we vacate the orders sustaining Main Street's preliminary objections and striking JMB's mechanics'

---

[6] To the extent that Main Street contests the amount of its unpaid debts due under the Contract or its payment obligations under the Letter of Direction or the Dedication Agreement, Main Street is not barred from bringing suit on those agreements to determine the rights and obligations of the parties vis-à-vis each other.  ***See Matternas***, 642 A.2d at 1124 (holding that a lien proceeding is not intended to settle the contractual obligations of the parties).

lien claims, and remand for reinstatement of the mechanics' lien claims and further proceedings in these matters.[7]

Orders vacated.  Cases remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/28/2023

---

[7] Given our resolution of JMB's first issue, we need not address its remaining issues.